We'll hear the next case, Corbiere v. Berryhill. The question in this case ultimately is whether or not Ms. Corbiere was disabled on or before May 12, 2015, and if so, what was the onset date? Now, in this case, the district court erred, even though we review the ALJ's decision primarily, but here the district court erred in citing Valente v. Secretary for the proposition that the court must afford significant deference to an ALJ decision in a Social Security case. But that was an overpayment case, not a disability determination. And the commissioner also relies in their brief to you that you should rely on the Brault case. That was a decision regarding a vocational expert and the weight given to him, and it was dicta, because the court held in Brault that substantial deference should be given to ALJ determinations of fact. And that relied on immigration cases. The standard of review that you use is that you have the plenary power to de novo review the ALJ decision, and you're not just a rubber stamp, as you know. And determine whether it's supported by substantial evidence. That's right. And that substantial evidence is defined at looking at the evidence from both sides. You look at what gives it weight and what detracts from the weight. So this is different than in summary judgment or directed verdict, where you just need any evidence that somebody could rely on. You really have to weigh the evidence in deciding what's substantial. And it's also uncontroverted from many, many cases from this court, that the Social Security Act is a remedial statute and must be liberally construed to include and not exclude. Could you get to the specifics of your case? Yes. And now I'm getting to the specifics of the case. In this case, there was objective evidence of Ms. Corbiere's spinal impairment. There was an MRI that showed a mass effect on her lumbar nerves. She had straight leg raises. She had limited motion in her spine. She had sensory deficits and limited range of motion. I understand all that. And it seems that, at least as I understand the record, that the administrative law judge did consider what you've just said, the diagnoses of the lumbar issues, the depressive disorders, the bipolar disorder, the obesity, and did label these as severe impairments. Yes. But it then looked at what it understood as the record as a whole and found that there was residual functional capacity. So where do you think the ALJ went wrong? In other words, the ALJ did consider what you've just said and the findings of several treating physicians. He did, and he was wrong because there was not substantial evidence to overcome the objective evidence of the mass effect on a nerve root. He found that her testimony about pain and needing to lie down was not supported, that she was not credible. The evidence that he cited was not substantial. You know, she was able to do some things, but she had testified... Do we examine a determination that a person was not credible or at least not credible in parts of her testimony, looking to find substantial evidence? That's right. And the evidence was not substantial. Where do we say that we sort of parse out credibility and have to look at it as opposed to our, if we were hearing evidence, listening to a witness watching his or her demeanor and deciding, well, this doesn't really ring true, and they look like they're not telling the truth. Yeah, so substantial evidence is looking at it from both sides and what a reasonable mind would find. So once, you know, we've all known... Credibility, it seems to me, and that may be the problem that you've got here. If the ALJ is finding that your client, the applicant, is not credible in some of the things she's saying about what she can and cannot do, that's an issue. Right, but it's whether what he relied on in light of the objective test that starting... I'm not arguing that she was... Credible? No, I'm not arguing that she was disabled by only her mental illness, but starting when she started complaining about her back and then had these objective tests, if you knew somebody and they had a nerve impingement in their back and said, my back hurts, I have to lie down, saying that she occasionally cooked or occasionally did a few things, would you say this person is not credible? No. How would I know what the effect of an impingement on a nerve root would be without medical opinion that described what the effect would be or gave some view as to what the person's capacity might be in light of that particular diagnosis? I'm not a doctor and I'm not a... Exactly, and neither is the ALJ, and so once you have the case law and the regulations, once you have objective evidence to support a claim, you can't just say they're not credible because... But my problem is you have objective evidence that there are medical conditions. Yes. But how do we... What is the evidence that tells us one way or the other what the impact of those objective conditions is? This is not a civil case where we bring in opposing experts. The AL, once you have that under the case law, once you have a condition that could produce pain, then the judge cannot decide it doesn't, and you would need substantial evidence. It's all a question of the extent of the pain and how that interferes with functioning, isn't it? But what's the substantial evidence that she was not credible? The judge was applying his own medical knowledge. But the substantial evidence test applies to the overall determination of capacity. It doesn't apply to every subsidiary finding that comes up. No, no. The substantial evidence test, is there substantial evidence to support whether or not she's credible? And the cases go way back on that. Whether or not the determination of the ALJ or the secretary is supportive. But it's whether, if you look at the case law, it's whether each part of that determination, whether there's substantial evidence to find credibility, whether there's substantial evidence to support the treating physician. Let me just move on. Is it correct, though, that the ALJ limited the determination, residual function determination to sedentary work? Yes, and I don't think, if you credited her that she was in great pain, could not do her housework, and had to lie down, which would all be supported by a nerve impingement, then she could not do sedentary work. And on obesity, the judge did not explain. What evidence is there in the record that says that someone with these objective test results would have to lie down as often as the plaintiff claims she did, for example? That's the case law that, with that kind of objective evidence, it would support it, having a nerve compression. She was very close to 104, which is for the presumptive disability. She had a nerve root compression. She had limited range of motion. She had a positive straight leg raise. And when it's equal to, as opposed to meeting it, it means that her limitations are equal to those of the listing. And here she almost met the listing. She didn't have a positive straight leg raise in both the seated and supine positions. But this is not a civil lawsuit. I've never heard that we have to prove that a nerve root compression can cause pain. I think that that is within the realm of medical knowledge. And the cases about evaluating pain talk about that. Once you have this kind of objective test, we don't have to have a burden to show it can cause pain. Three of the providers that were identified by you and your client, it seems to me, are not treating medical sources. One is a social worker, another is a clinical worker, and the third treated her only once. On the mental health part, I think that in addition to the physical may add to her limitations. I think the judge, ALJ, probably did correctly determine her mental RFC and that she can't deal with the public. My main argument is that it's the physical part where he erred and also the obesity because he didn't explain how a woman with a BMI of 44, morbid obesity, and a nerve compression of the back could work on a full-time sustained basis. You'll have two minutes. Yes, thank you. Thank you, Your Honors. Could I ask you at the outset to take up your adversary's question about obesity and the question of whether the administrative law judge examined the documented obesity when evaluating testimony concerning limitations. Yeah, the ALJ actually referred to her obesity twice, at least in the decision. And specifically said that he was applying the relevant SSR in making determinations regarding her abilities. And, in fact, it looks like he did so in as much as the RFC reflects much greater restrictions than the other evidence of record, such as the mostly normal examination findings, the relatively good daily activities as reported to Dr. Melcher, and the conservative treatment and denial of treatment. So given that, I think that there is some indication that he considered obesity. That said, we also have case law like Gates, which is cited in the brief, saying if an ALJ says that he has considered something or has done something, it's up to the plaintiff, the appellant, to demonstrate that he hasn't. And here, given the repeated citation to obesity, I don't think he can do that. Just a couple of points I wanted to make in addressing counsel's points. First of all, the burden to prove RFC is on the claimant in a Social Security case. Cite Popor is a good case for that proposition. That is their burden of proof, not ours. Substantial evidence standard is a very deferential standard of review, the most, actually. And it does not require all evidence to support the ALJ's position. It doesn't even require more of the evidence to support the ALJ's decision. And what it also does is means that the ALJ gets to reasonably interpret evidence consistent with the record at large, not the claimant, again. So in terms of the counsel saying that the MRI shows something or another, he's citing no legal or medical authority for the proposition that that MRI means anything. And when looked at the record of large, which, as I indicated, includes relatively conservative treatment, mostly normal examination findings, and significant daily activities, it was reasonable for the ALJ to reach the determination that he did. It's important to emphasize here, and I think something that's lost throughout the briefing here today in counsel's argument, this is an extremely restrictive RFC. Sedentary work is the least demanding category of work recognized by our regulations. And that necessarily accommodates a fair amount of abnormality. You would expect to see abnormalities in a record where the ALJ has found that they were limited to sedentary work. Otherwise, the ALJ would find that you could do light work and medium work and heavy work and very heavy work. So the very fact that there's some abnormality is not a problem. And also, under the substantial evidence standard, even if it was inconsistent, that wouldn't be fatal because all of the evidence does not have to support the ALJ's decision. Do you have any other questions with regards to that? Okay. And so just reiterating that this is a very restrictive RFC. This is subject to the most deferential standard of review. And in addition to all of those findings, I think it's important to note that the claimant's testimony, with the exception of her statement that she's essentially bedridden, all actually is consistent with the RFC and thus provides even more substantial evidence support for the RFC that we ended up with here. So on what basis was the ALJ entitled to determine she was not credible with respect to her being bedridden? So she reported to Dr. Melcher that she did activities of daily living, including chores. Dr. Melcher's retreating, right? No, Dr. Melcher was the consultative physician. And in that report, she reported a fair amount of daily activities, including chores. And there's actually a really interesting point that I didn't point out in my brief, but, you know, oral argument review. I noticed that she tells her therapist that she's very excited because for the first time ever, her husband has agreed to contribute to the housework, which means that before that, at the very end, she was doing all the housework. So this is not someone who was- Or wasn't getting done. Or I guess nobody was getting it done. But considering that she had mentioned to Dr. Melcher that she does chores, the combination of those two just indicates that she's not doing nothing. And she also is getting out of bed inasmuch as she's going for walks, as she's reported to her pain management specialist. She's going to treatment sessions, other things that show that she is getting out of bed. She also indicates that she spends a lot of time playing on the computer and doing other things. So there definitely was a fair amount of evidence. And even just the treatment notes that you're looking at, that don't show a great deal of abnormality on a consistent basis, is just inconsistent with the idea. And not to mention the fact that she decided to just basically stop doing anything at the end of her treatment with Lecour, that she basically says, you know, I'm not going to try massage. I'm not going to try physical therapy. I'm just going to move on with my life. You're bedridden, but you're not doing any of that stuff. That's inconsistent. And under the SSR, those kind of inconsistencies are exactly what an ALJ should base their determination of credibility on. And here, the ALJ bent over backwards to accept most of what she had to say, but that just was a bridge too far. Thank you. Thanks. Any other questions? No. Thank you. Mr. Schneider. Yes, thank you. Dr. Melcher was the psychological consultant. There was never a physical consultative exam. Dr. Melcher examined my client on January 14th, 2014, before she reported her physical impairments. And I think that's part of the error here is the judge relied on statements before she claimed she was physically disabled. We don't have to prove that she was able, starting on the date of her application or going back to her onset date. But as of February 25th, 2014, she first reported her leg pain, and then she reported tingling. So it wasn't until August 26th, 2014, eight months after she saw Dr. Melcher, that she had this MRI. The case law makes clear from this circuit and every circuit that when you have objective evidence that supports pain, that the court has to consider that. And I understand that you want to have a doctor saying a nerve impingement can cause pain. But the case law, that is not what the law is. In light of that, after August 26th, there are not reports that she could do everything. Actually, she reported to her therapist that she was doing almost nothing that she was having. We have to look at that date onward. So I'm asking this court to look, starting on June 23rd, when she reported leg weakness and falling because of it. Is there substantial evidence that she was lying, that she was not credible? She didn't say she was bedridden. She spent much of the day in bed. But she was able to do some chores, and it was very hard, and it caused her pain. The ALJ did not explain how somebody with a BMI of 44 and that kind of nerve impingement could perform even sedentary work where you have to walk for two hours a day and sit for six hours a day. Thank you. Thank you. You're welcome. Thank you both for your arguments. The court will reserve decision.